UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CARLOS SANTIAGO, et al.

                              Plaintiffs,

                                                      Case # 19-CV-6859-FPG

v.

                                                      DECISION AND ORDER

CITY OF ROCHESTER POLICE
DEPARTMENT, et al.,

                              Defendants.

## INTRODUCTION

On November 19, 2019, Plaintiffs Carlos A. Santiago ("Santiago") and Melissa A. Laffredo ("Laffredo") (collectively, the "Plaintiffs") filed a Complaint against the Rochester Police Department, Officers Tyshon Williams, Joseph Bonnacci, and Mary Barnes, Sergeant Melanie Rivera, Assistant District Attorney Kristen Sippel, and unknown officers and lieutenants, raising various 42 U.S.C. § 1983 claims.  ECF No. 1.  Each Plaintiff filed a Motion for Leave to Proceed *in forma pauperis* ("IFP motions").  ECF Nos. 2, 3.  The Court granted the IFP motions and screened the Complaint pursuant to 28 U.S.C. § 1915.  ECF No. 4.  The Court dismissed all claims.  *Id.*  Specifically, the claims against the City of Rochester Police Department and Sippel were dismissed with prejudice and the Court provided Plaintiff until December 23, 2019 to file an amended complaint as it pertained to Plaintiffs' additional claims.  *Id.*

Plaintiffs retained counsel, were provided an extension of time to file an amended complaint, ECF No. 6, and filed the Amended Complaint on February 13, 2020, ECF No. 7.  The Amended Complaint asserts nine causes of action against the City of Rochester, Officers Tyshon Williams, Joseph Bonnacci, Brad Elliot, Mary Barnes, Sergeant Melanie Rivera and John Doe(s)

(collectively, "Defendants") for: (1) unreasonable search and seizure pursuant to 42 U.S.C. § 1983; (2) false arrest pursuant to 42 U.S.C. § 1983; (3) false imprisonment pursuant to 42 U.S.C. § 1983; (4) malicious prosecution pursuant to 42 U.S.C. § 1983; (5) failure to intervene pursuant to 42 U.S.C. § 1983; (6) conspiracy to violate Plaintiffs' constitutional rights pursuant to 42 U.S.C. § 1983; (7) improper policy, custom, and practice of Defendants and failure to supervise pursuant to 42 U.S.C. § 1983; (8) replevin; and (9) conversion. *See* ECF No. 7.

Defendants each answered the Amended Complaint, *see* ECF Nos. 9, 14, 20, and the case proceeded to discovery. On October 16, 2020, Defendants moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). ECF No. 21. Plaintiffs responded on November 9, 2020, ECF No. 23, and Defendants replied on December 1, 2020, ECF Nos. 28, 29.

For the reasons that follow, Defendants' motion is GRANTED, and Plaintiffs' Amended Complaint is DISMISSED.

## BACKGROUND

The following facts are drawn from Plaintiffs' Amended Complaint unless otherwise indicated. ECF No. 7.

Plaintiffs allege that on August 22, 2018, at 10:45 p.m., Laffredo's neighbor, Gary Cook, threatened to kill the Plaintiffs, their daughter, their dog and their neighbor. *Id.* ¶ 16. In response, Santiago called the police and pressed charges against Mr. Cook. *Id.* ¶ 17. Mr. Cook was arrested and released on bail a few hours later. *Id.* ¶¶ 18, 19.

On August 23, 2018, at 1:45 a.m., Plaintiffs claim that Mr. Cook was drinking on his front porch when he again threated Laffredo and her neighbor.[1] *Id.* ¶¶ 21-23. Mr. Cook then called the police and allegedly told the responding officers that Santiago "threatened him with a .22 caliber

---

[1] Plaintiffs further assert that Mr. Cook was "clearly intoxicated" and continued to drink while giving statements to the responding officers. ECF No. 7 ¶ 28.

pistol." *Id.* at 24, 25.  Specifically, based on a recording of Mr. Cook's 911 call and the "Body Worn Camera" (the "BWC") video from the officers on scene, Mr. Cook stated that "an individual named Carlos Cruz pointed 'a .22' at him." *Id.* ¶ 26.

Based upon the statements by Mr. Cook, the responding officers detained Santiago and, Sergeant Rivera subsequently began questioning Laffredo about the alleged pistol. *Id.* ¶¶ 30, 31. In response, Laffredo stated that Santiago did not have a pistol and that Plaintiffs had had an altercation with Mr. Cook just hours earlier—for which, Plaintiffs assert, Mr. Cook sought revenge. *Id.* ¶ 32.  Sergeant Rivera then allegedly threatening to take Plaintiffs' daughter away and have them arrested if the pistol was not produced. *Id.* ¶ 33.  Further, she told Laffredo that she "knew" Santiago had hidden the pistol on the premises—specifically, under a mattress in the downstairs apartment accessible from the front porch at 32 Woodlawn Street, Rochester, New York 14607.[2] *Id.* ¶ 34.  However, according to Mr. Cook, the weapon was on the first floor accessible from the front of the building. *Id.* ¶ 38.

Sergeant Rivera then demanded that Laffredo allow the officers to search the building; she allegedly stated that the officers had a search warrant; and she stated that if Laffredo did not sign an index card providing consent to search the officers would "tear her place apart" and take Plaintiffs' child. *Id.* ¶¶ 40-42, 45.  Plaintiffs contend that in response to this threat Laffredo informed the officers that she owned a shotgun and that it was in the attic. *Id.* ¶ 43.  She then signed the consent to search. *Id.* ¶ 49.  According to Plaintiffs, after Laffredo signed the consent, Sergeant Rivera told Officer Williams to continue talking to Laffredo so that she would not revoke her consent. *Id.* ¶ 50.

---

[2] Plaintiffs assert that Plaintiff Santiago never resided at 32 Woodlawn Street, Rochester, New York 14607, but rather, lived at 71 Hillview Drive, New York 14622.  ECF No. 7 at ¶¶ 36, 37.  Moreover, Plaintiffs claim that the entrance to Plaintiff Laffredo's residence was on the second floor in the back of the building.

After officers found the shotgun, Santiago was placed into the back of a police vehicle and was taken downtown for further questioning and investigation. *Id.* ¶¶ 55-56. Laffredo later called the jail and was informed that Santiago was arrested on a gun charge and would have court the following morning. *Id.* ¶ 57. He was then charged with a felony gun charge, spent six days in jail, and was released after the Grand Jury did not find enough evidence to indict him. *Id.* ¶¶ 58-60. The charge was later reduced to Menacing in the Second Degree. *Id.* ¶ 61. All such charges were ultimately dismissed, *id.* ¶ 64, and Laffredo's shotgun was returned. ECF No. 23-1 at 22.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."[3] The standard for deciding a Rule 12(c) motion is "the same . . . standard [that is] applicable to dismissals pursuant to [Rule] 12(b)(6). Thus, [courts] will accept all factual allegations in the [C]omplaint as true and draw all reasonable inferences in [the plaintiff's] favor." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 429 (2d Cir. 2011).

On a Rule 12(c) motion, courts consider "the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." *Id.* at 422 (quoting *Roberts v. Babkiewicz*, 582 F.3d 418, 419 (2d Cir. 2009)). "A complaint is [also] deemed to include any written instrument attached to it as an

---

[3] Plaintiffs assert that Defendants' motion is premature because the pleadings have not yet closed. ECF No. 23-1 at 4. In support, Plaintiffs indicate that the parties previously agreed that the deadline to amend "should be after defendants' paper discovery deadline." *Id.* However, the governing Scheduling Order does not set a date certain for which the pleadings are deemed closed, ECF No. 34, and it appears that all Defendants have answered the Amended Complaint, *see* ECF Nos. 9, 14, 20. Thus, the necessary pleadings have been received. *See* Fed. R. Civ. Pro. 7(a). Moreover, courts in this Circuit have previously determined that asserting a need for discovery in order to fully set forth a claim is insufficient to defeat a motion for judgment on the pleadings as the need for discovery to adequately state a claim "is tantamount to an admission that [Plaintiffs have], thus far, failed to state a [] claim." *Vail v. City of New York*, 68 F. Supp. 3d 412, 431 (S.D.N.Y. Dec. 2, 2014). On this basis, the Court does not find Defendants' motion premature here.

exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint." *Id.* (alteration in original) (quoting *Sira v. Morton*, 380 F.3d 57, 56 (2d Cir. 2004)) (additional citations and quotations omitted).  But if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56" and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d).

"When matters outside the pleadings are presented in support of, or in opposition to a [Rule 12(c)] motion, a district court must either exclude the additional material and decide the motion on the [pleading] alone or convert the motion to one for summary judgment under [Rule 56] and afford all parties the opportunity to present supporting material."  *Stephens v. Bayview Nursing & Rehab. Ctr.*, No. 07-CV-0596 (JFB)(AKT), 2008 WL 728896, at *2 (E.D.N.Y. Mar. 17, 2008) (internal quotation marks omitted).  "Federal courts have complete discretion to determine whether or not to accept the submission of any material beyond the pleadings offered in conjunction with a [Rule 12(c)] motion, and thus complete discretion in determining whether to convert the motion to one for summary judgment."  *Id.* (internal quotation marks omitted); *see* Fed. R. Civ. P. 12(d).

Because discovery remains ongoing, the Court declines to convert Defendants' motion into a Rule 56 motion for summary judgment.  *Cf. Hellstrom v. U.S. Dep't of Veterans Aff.*, 201 F.3d 94, 97 (2d Cir. 2000) ("Only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery.").  Accordingly, the Court will not consider anything "submitted by either party, by affidavit or otherwise, outside of the [c]omplaint and [a]nswer." *Viacom Int'l Inc. v. Time Inc.*, 785 F. Supp. 371, 375 (S.D.N.Y. 1992).

However, the Court will consider the BWC footage.  The Second Circuit has emphasized that for a document outside the complaint to be considered at a motion to dismiss stage, the plaintiff must have relied upon it in drafting the complaint.  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (citing *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991)).  Indeed, it is not sufficient that the plaintiff merely had notice or possession of the document, but it should be clear that plaintiff relied on such document.  *Id.*

Here, Plaintiffs assert that the mention of the BWC video in their Amended Complaint for various limited purposes does not permit the Defendants to submit the footage for consideration herein, ECF No. 23-1 at 7.  Despite this assertion, it is readily apparent that Plaintiffs relied upon the BWC video recording in drafting their Amended Complaint as the video footage, and observations from the interactions depicted, are explicitly referenced at various points throughout the Amended Complaint.  *See, e.g.*, ECF No. 7 ¶¶ 26, 28, 38, 50.  Consideration of video footage in such circumstances is supported by the relevant caselaw.  *Compare Brown v. Showtime Networks, Inc.*, 394 F. Supp. 3d 418, 436 (S.D.N.Y. 2019) (court considered a documentary attached to defendants' declaration because it was integral to the complaint, however, the court considered only the film itself and not the parties' characterization of what it shows) *with Gersbacher v. City of New York*, 134 F. Supp. 3d 711, 719 (S.D.N.Y. 2015) (plaintiff made clear that videos of an arrest were not used in drafting the complaint and therefore, the court found the videos were not integral and could not be considered in evaluating a motion to dismiss).  Thus, the Court will consider the footage in deciding the motion here.

## DISCUSSION

Defendants assert that each of Plaintiffs' claims should be dismissed on the ground that each claim is meritless and because the eighth and ninth claims are moot.  *See generally* ECF No.

21-5.  In response, Plaintiffs assert that each claim has been sufficiently plead.  *See generally* ECF No. 23-1.  However, Plaintiffs concede that the intra-corporate doctrine bars recovery on their sixth claim for relief, conspiracy to violate Plaintiffs' constitutional rights pursuant to 42 U.S.C. § 1983, and therefore, withdraws the claim.  *Id.* at 2.  Additionally, Plaintiffs agree that the return of the shotgun moots the eighth claim for relief, replevin.  *Id.*  As such, the Court will not address Plaintiffs' sixth or eighth claim, and both claims are DISMISSED with prejudice.

## I.    Unreasonable Search and Seizure

Defendants assert that Plaintiffs' first claim of unreasonable search and seizure (1) may only be properly brought by Laffredo, as Santiago had no possessory or legal interest in the premises or shotgun; (2) may only be brought against Sergeant Rivera as she was the only Defendant allegedly involved; and (3) fails for the separate and distinct reason that there is no claim of damages.  ECF No. 21-5 at 6-7.  In response, Plaintiffs contend that Santiago had an expectation of privacy as an overnight guest, that numerous officers participated in the search, and that the damage suffered by Laffreo was the "great emotional and psychological distress" she suffered due to Santiago's subsequent arrest and prosecution.  ECF No. 23-1 at 8-9.

To successfully object to an entry and search of a residence under the Fourth Amendment, a plaintiff must show that he or she had a "'legitimate expectation of privacy'" in the place searched.  *United States v. Hamilton*, 538 F.3d 162, 167 (2d Cir. 2008) (quoting *Rakas v. Illinois*, 439 U.S. 128, 143 (1978)).  It is well established that an overnight guest has a "'legitimate expectation of privacy in his host's home.'"  *United States v. Osorio*, 949 F.2d 38, 41 (2d Cir. 1991) (quoting *Minnesota v. Olson*, 110 S. Ct. 1684, 1689 (1990)).  However, that expectation does not always extend to the entire premises.  *Osorio*, 949 F.2d at 41.  For example, tenants in

multi-tenant buildings have no legitimate privacy expectation in common areas, even if guarded by locked doors. *United States v. Holland*, 755 F.2d 253, 255 (2d Cir. 1985).

The Amended Complaint indicates that the building at 32 Woodlawn Street, Rochester, New York 14607—the location of the search at issue—is a building which consists of four separate and distinct dwellings. ECF No. 7 ¶ 35. Laffredo's residence was on the second floor, with an entrance in the back of the building, away from the street. *Id.* The search occurred in, and the shotgun was recovered from, "the upstairs attic in the back part of the apartment building" at 32 Woodlawn Street. ECF No. 23-1 at 14; *see also* ECF No. 7 ¶ 52. Nowhere in their Amended Complaint, or in their response to Defendants' motion, do Plaintiffs claim that the attic was in Laffredo's apartment or was a private area of Laffredo's apartment in the 32 Woodlawn Street apartment building. Thus, it is unclear from the face of the Amended Complaint whether Santiago had a legitimate expectation of privacy in the attic, even if he was Laffredo's overnight guest. Therefore, he has not set forth sufficient standing to raise a claim for unreasonable search and seizure and the claim must be DISMISSED.

Additionally, Laffredo asserts that this allegedly unlawful search and seizure which led to Santiago's arrest caused emotional and psychological damage to her, and at a minimum, she is entitled to nominal damages on such claim. However, § 1983 does not support a derivative claim. *See Pritzker v. City of Hudson*, 26 F. Supp. 2d 433, 445 (S.D.N.Y. 1998) (citing *Stallworth v. City of Cleveland*, 893 F.2d 830, 837-38 (6th Cir. 1990) ("[Section 1983] provides redress to a party suffering injuries from a deprivation of any rights, privileges or immunities secured by federal law . . . . A loss of consortium claim does not represent an injury based on a deprivation of [such] rights, privileges, or immunities.")) (additional citations omitted). Laffredo's alleged injury is not

based on a deprivation of *her* rights—the type of injury which § 1983 provides redress and her claim must be DISMISSED.

Therefore, Defendants' motion for judgment on the pleadings on Plaintiffs' unlawful search and seizure claim is GRANTED.

## II.    False Arrest

Next, Defendants assert that the Amended Complaint and BWC footage demonstrate clear probable cause for the arrest of Santiago and therefore, the claim of false arrest must be dismissed. ECF No. 21-5 at 11-14.   Specifically, Defendants argue that Cook made clear references to Santiago, clearly referenced the weapon was a rifle or a shotgun, was not apparently impaired from providing accurate information.   *Id*.   Defendants also note that Laffredo eventually admitted that there was a gun on the premises and the gun was in fact found.   *Id.*   Plaintiffs, however, assert that probable cause was lacking as an uncorroborated statement by Cook did not provide probable cause for an arrest.   ECF No. 23-1 at 10.

In order to assert a § 1983 claim for false arrest, Plaintiffs must show that: "(1) the defendant[s] intended to confine plaintiff[s]; (2) the plaintiff[s] w[ere] conscious of the confinement; (3) the plaintiff[s] did not consent to the confinement; and (4) the confinement was not otherwise privileged." *Jackson v. City of New York*, 939 F. Supp. 2d 235, 248 (E.D.N.Y. 2013) (additional citations and quotations omitted).   The existence of probable cause to arrest constitutes justification and "is a complete defense to an action for false arrest." *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994).

"In general, probable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a

crime." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996).  A determination of probable cause is based on the totality of the circumstances.  *Weiner v. McKeefery*, 90 F. Supp. 3d 17, 29 (E.D.N.Y. 2015).  Indeed, courts must consider what facts were available to the officer at the time of the arrest and immediately prior to the arrest.  *Id.* (citing *Peterson v. Cnty. of Nassau*, 995 F. Supp. 305, 313 (E.D.N.Y. 1998)) (additional citations omitted).  The Second Circuit has held that probable cause can exist based on information from a victim or eyewitness.  Specifically, the Court has stated that "probable cause exists if a law enforcement officer 'received [ ] information from some person, normally the putative victim or eyewitness, unless the circumstances raise doubt as to the person's veracity.  The reliability or veracity of the informant and the basis for the informant's knowledge are two important factors.'"  *Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014) (quoting *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006)) (internal quotation marks and citations omitted).

Even absent probable cause, a police officer is entitled to qualified immunity where "(1) [her] conduct does not violate clearly established statutory or constitutional rights or which a reasonable person would have known, or (2) it was objectively reasonable for [her] to believe that [her] actions were lawful at the time of the challenged act."  *Jenkins v. City of New York*, 478 F.3d 76, 87 (2d Cir. 2007) (internal quotation marks and citations omitted).  Thus, Plaintiffs' false arrest claim turns on whether the Defendants had arguable probable cause to arrest—not whether Santiago in fact committed the unlawful conduct.  *See id.*

As Plaintiffs alleged in their Amended Complaint, Cook called the police and reported that Santiago had threatened him with a gun.  *See* ECF No. 7 ¶¶ 24-26.  Additionally, Plaintiffs allege that once the officers arrived, Cook stated again to the officers that Santiago threatened him with a pistol.  *Id.* ¶ 25.  Based on such statements, Santiago was detained.  *Id.* ¶ 30.  Plaintiffs claim that

this statement was insufficient to provide probable cause to arrest Santiago.  ECF No. 23-1 at 10. Specifically, Plaintiffs argue that Defendants had reason to doubt Cook's credibility because he was intoxicated and had motive to falsely accuse Santiago.  *Id.* at 12.  Moreover, Plaintiffs' neighbor allegedly told Defendants about Cook's history of making false accusations.  *Id.*

Despite these assertions, it simply cannot be said that the arrest of Santiago was without, at a minimum, arguable probable cause.  Indeed, Cook stated to responding officers that Santiago threatened him with a gun, signed a supporting deposition stating the same, and after numerous denials, Laffredo finally admitted to the presence of a shotgun on the premises—which officers ultimately found following a search.  *See, e.g.*, *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995), *cert. denied*, 517 U.S. 1189 (1996) ("An arresting officer advised of a crime by a person who claims to be the victim, and who has signed a complaint or information charging someone with the crime, has probable cause to effect an arrest absent circumstances that raise doubts as to the victim's veracity.").  Moreover, though Plaintiffs contend that the prior relationship between Plaintiffs and Cook demonstrates a motive for false accusations, such animosity between the parties also logically supports the accusation that a threat was made by Santiago to Cook, especially taking into consideration that Cook, just hours prior, was allegedly in jail due to threats made towards Santiago.  Likewise, even if this relationship demonstrated a risk of false accusation, the officers responded accordingly by talking to Laffredo and receiving confirmation that there was, in fact, a gun on the premises, and having Cook sign a deposition memorializing his statement of events.  *See, e.g.*, *Mistretta v. Prokesch*, 5 F. Supp. 2d 128, 133-135 (E.D.N.Y. 1998) (further questioning relevant parties, obtaining signed statement, and further inspecting the scene was sufficient to establish probable cause despite clear retaliatory motive by the alleged victim

reporting the crime).  Therefore, there was probable cause to arrest Santiago and the false arrest claim must be DISMISSED.  Defendants' motion on such claim is thus GRANTED.

## III.    False Imprisonment and Malicious Prosecution

Because the Court has concluded that the allegations in Plaintiffs' Amended Complaint establish that there was probable cause to arrest Santiago, the claims for false imprisonment and malicious prosecution also fail.  *See Kilburn v. Vill. of Saranac Lake*, 413 F. App'x 362, 363-64 (2d Cir. 2011) (summary order) (false imprisonment and malicious prosecution claims properly dismissed on summary judgment where probable cause existed to arrest).  Therefore, Defendants' motion on each such claim is GRANTED.

## IV.    Failure to Intervene

Plaintiff asserts that Defendants are liable for failing to intervene to prevent Santiago's arrest.  "It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994). "An officer who fails to intervene is liable for the preventable harm caused by other officers where that officer observes or has reason to know" that other officers have committed a constitutional violation, provided the officer has "a realistic opportunity to intervene to prevent the harm from occurring." *Id.*

Plaintiffs' allegations suggest that each Defendant participated in the arrest of Santiago. *See* ECF No. 7 ¶¶ 82-86.  "Where the officer is a direct participant in the allegedly unlawful conduct, the failure to intervene theory of liability is inapplicable." *Sanabria v. Tezlof*, 11-CV-6578 (NSR), 2016 WL 4371750, at *5 (S.D.N.Y. Aug. 12, 2016).  While courts have allowed plaintiffs to proceed through discovery to later refine the claims based on the specific roles'

defendants played, *see, e.g.*, *Folk v. City of New York*, 243 F. Supp. 3d 363, 376 (E.D.N.Y. 2017), that is unnecessary here as the underlying claim for false arrest is dismissed due to the presence of probable cause as alleged in Plaintiffs' Amended Complaint.  It follows that the failure to intervene claim is DISMISSED on the grounds that there is no underlying unlawful conduct which Defendants should have prevented, and Defendants' motion is therefore GRANTED.

## V.   Policy, Custom, and Practice of Defendants and Failure to Supervise and Train

Plaintiffs also seek to hold the City of Rochester liable for the officers' conduct on the theories that it failed to train and supervise the officers and it maintained policies and customs that precipitated the conduct here.  Defendants argue, and the Court agrees, that the Amended Complaint presents insufficient allegations to state a claim against the City.

A municipality may not be "held liable under § 1983 solely because it employs a tortfeasor." *Bowen v. Cnty. of Westchester*, 706 F. Supp. 2d 475, 483-84 (S.D.N.Y. 2010).  Instead, a plaintiff must show that "action pursuant to official municipal policy of some nature caused a constitutional tort." *Id.* at 483 (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). In the context of evaluating the sufficiency of a complaint, a plaintiff "cannot merely allege the existence of a municipal policy or custom, but must allege facts tending to support, at least circumstantially, an inference that such municipal policy or custom exists." *Triano v. Town of Harrison, NY*, 895 F. Supp. 2d 526, 535 (S.D.N.Y. 2012) (internal citation omitted) (collecting cases).  "[M]ere allegations of a municipal custom or practice of tolerating official misconduct are insufficient to demonstrate the existence of such a custom unless supported by factual details." *Id.* Likewise, a claim that a municipality failed to train or supervise an alleged tortfeasor requires some factual details to survive a motion to dismiss. *See Tricoles v. Bumpus*, No. 05-CV-3728, 2006 WL 767897, at *4 (E.D.N.Y. Mar. 23, 2006) ("Courts have dismissed § 1983 . . . claims where a

complaint merely asserts bare conclusory statements that a defendant supervisor failed to supervise or train, or that the alleged constitutional violation occurred as a result of a custom or policy that was issued by the defendant supervisor.").

Plaintiffs' allegations here do not pass muster. They offer no factual details "about the nature of any suspect policies, practices, or procedures, must less how they caused [the officers] to violate [their] rights." *Bruckman v. Greene Cnty.*, No. 19-CV-670, 2020 WL 886126, at *5 (N.D.N.Y. Feb. 24, 2020). They do not present facts to explain how the City failed to train or supervise the officers who responded to Cook's 911 call. *See Simms v. City of New York*, 480 F. App'x 627, 631 n.4 (2d Cir. 2012) (summary order) (rejecting the proposition that a "mere conclusory allegation that the City failed to train its officers, without any supporting factual material, is sufficient to state a plausible claim for municipal liability under § 1983").

In their opposition, Plaintiffs only defend this claim by arguing that the BWC footage demonstrates that the officers were not adequately trained. ECF No. 23-1 at 21. Plaintiffs specifically allege that the footage shows that officers "ignored, or were oblivious to," facts that should have prevented Santiago from arrest/criminal charges. *Id.* Even assuming it were true that the responding officers failed to adequately investigate, such a single incident does not raise an inference of the existence of a custom or policy. *See Santiago v. City of Rochester*, 481 F. Supp. 3d 152, 160 (W.D.N.Y. 2020) (dismissing plaintiff's *Monell* claim on the basis that the failure to discipline one officer did not demonstrate an inference of a policy or practice in the municipality). Therefore, the claim is DISMISSED, and Defendants' motion is GRANTED.

**VI.    Conversion**

Finally, Defendants assert that because Plaintiff Laffredo retrieved the shotgun seized during the search of the attic, the claim for conversion is moot and should be dismissed. ECF No.

21-5 at 23.  However, Plaintiffs contend such a claim is not moot because damage for conversion is the "value of the property at the time and place of the conversion plus interest."  ECF No. 23-1 at 22 (citing *Iglesias v. United States*, 848 F.2d 362, 364-65 (2d Cir. 1988) (additional citation omitted)).

Conversion is the "'exercise of unauthorized dominion over the property of another in interference with a plaintiff's legal title or superior right of possession.'"  *Citadel Mgmt. Inc. v. Telesis Trust, Inc.*, 123 F. Supp. 2d 133, 147 (S.D.N.Y. 2000) (quoting *Lopresti v. Terwilliger*, 126 F.3d 34, 41 (2d Cir. 1997)).  "To state a claim for conversion, a plaintiff must allege facts sufficient to establish that the defendant acted without authorization, defendant exercised dominion or right of ownership over property belonging to the plaintiff, plaintiff has made a demand for the property, and that demand has been refused."  *Harris v. Coleman*, 863 F. Supp. 2d 336, 342 (S.D.N.Y. 2012).  Additionally, Plaintiff is required to demonstrate "legal ownership or an immediate superior right of possession to a specific identifiable thing."  *Id.* (citation omitted).  Demand is only required when the original possession is lawful.  *Reserve Sols., Inc. v. Vernaglia*, 438 F. Supp. 2d 280, 288 (S.D.N.Y. 2006).

Here, as discussed above, the search and seizure of the shotgun was not unreasonable.  Moreover, the shotgun was taken as evidence for the pending crimes against Santiago.[4]  This logically cannot be said to be unauthorized control.  Moreover, Plaintiffs do not allege that the Defendants *refused* Laffredo's demand for return of the shotgun.  Rather, the Amended Complaint merely asserts that Defendants had failed to return the property at the time the Amended Complaint was filed.  *See* ECF No. 7 ¶ 145.  However, Plaintiffs have since acknowledged that the property

---

[4] Additionally, the City of Rochester is nevertheless an improper Defendant for this cause of action.  Indeed, there is no allegation that the City was holding Laffredo's property.  Rather, it seems, according to Defendants that the property was held by the District Attorney's Office.  *See* ECF No. 28-1 at 24.

was in fact, returned. *See* ECF No. 23-1 at 21. Because there is no allegation that Defendants refused to return Laffredo's shotgun and the gun has been returned, this claim must be DISMISSED, and Defendants' motion is GRANTED.

## CONCLUSION

For the reasons set forth above, Defendants' Motion for Judgement on the Pleadings is GRANTED, and Plaintiffs' Amended Complaint is DISMISSED with prejudice. The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: July 30, 2021
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York

16